In re NEW CENTURY TRS HOLDINGS, INC, et al., Debtors.

Molly S. White and Ralph N. White, Plaintiffs,

v.

New Century TRS Holdings, Inc., et al., Defendants.

Bankruptcy No. 07–10416 (KJC).
Adversary No. 10–55357 (KJC).

United States Bankruptcy Court, D. Delaware.

June 7, 2011.

David W. Carickhoff, Elizabeth A. Sloan, Blank Rome LLP, Ronald S. Gellert Eckert Seamans Cherin & Mellott LLC, Wilmington, DE, Nicholas C. Rigano, Hahn & Hessen LLP, New York, NY, for Debtors.

## MEMORANDUM[1]

KEVIN J. CAREY, Bankruptcy Judge.

On November 10, 2010, Molly S. White and Ralph N. White (the "Whites") commenced the above-captioned adversary

---

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a), and 157(b)(1).

proceeding by filing a complaint entitled "Adversary Complaint of Molly S. White and Ralph N. White to Determine Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A) and (B), [§ ]523(a)(3)(B), (a)(4), (a)(6) and 11 U.S.C. § 523(a)(19)(A) and (B), [and] Rule 7001 of the Federal Rules of Bankruptcy Procedure" (the "Complaint"). The Complaint contains twelve counts arising out of a consumer mortgage loan transaction between debtor New Century Mortgage Corporation ("NCMC") and the Whites that closed on or about July 26, 2006.[2] On December 15, 2010, the New Century Liquidating Trust (the "Trust"), by and through Alan M. Jacobs, the New Century Liquidating Trustee (the "Trustee"), moved to dismiss the Complaint, which was filed more than three years after the claims bar date, as an attempt to file a late proof of claim for damages arising from alleged wrongdoing that occurred prior to the Debtors' bankruptcy filing (the "Motion to Dismiss") (Adv.D.I. 10). Moreover, the Trustee argues that, because the Debtors transferred any interest in the note and mortgage prior to the bankruptcy filing, this Court lacks subject matter jurisdiction to hear certain claims raised by the Whites relating to rescission or cancellation of the note and mortgage. For the reasons set forth herein, the Motion to Dismiss will be granted, in part, to dismiss Counts II, VIII, and XII for lack of subject matter jurisdiction, and denied as to the remaining claims.

## BACKGROUND

### 1. Factual Allegations Regarding the Pre-petition Loan Transaction

In their Complaint, the Whites allege that they applied for a mortgage loan from NCMC. On or about July 26, 2006, the Whites executed an Adjustable Rate Note made payable to NCMC in the original principal amount of $272,500.00 (the "Note"), and a mortgage (the "Mortgage") granting NCMC a lien against the Whites' real property located in Volusia County, Florida (the "Property") to secure payment under the Note. Prior to the loan closing, NCMC failed to provide the Whites with (i) timely preliminary disclosures as required by the Truth–in–Lending Act, (ii) a timely Good Faith Estimate of the anticipated costs associated with the loan as required by RESPA, and (iii) copies of other documents signed by the Whites before, during, or after the loan closing. The rushed manner in which NCMC's brokers or agents conducted the loan closing, along with NCMC's failure to provide the Whites with copies of documents, made it impossible for the Whites to be informed of the true fees and charges associated with the loan, including payment of a yield spread premium and an adjustable interest rate.[3]

---

**2.** The twelve counts in the Complaint are: (i) violation of RESPA, 12 U.S.C. § 2601 *et seq.* and HUD's Regulation X (24 C.F.R. § 3500), (ii) Rescission of Mortgage–Truth–in–Lending Act, (iii) Violation of Florida Deceptive and Unfair Trade Practices Act § 501.201 *et seq.*, (iv) Fraud, (v) Second Violation of Florida Deceptive and Unfair Trade Practices Act, (vi) Aiding and Abetting Breach of Fiduciary Duty, (vii) Fraud by Concealment, (viii) Declaratory Judgment, (ix) Civil Conspiracy, Fla. Stat. § 895.01–895.06, (x) Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), (xi) Racketeer Influenced

and Corrupt Organizations Act, 18 U.S.C. § 1962(d), and (xii) Equitable Tolling.

**3.** A Yield Spread Premium is a bonus paid to a broker when it originates a loan at an interest rate higher than the minimum interest rate approved by the lender for a particular loan. The lender then rewards the broker by paying it a percentage of the "yield spread" (*i.e.*, the difference between the interest rate specified by the lender and the actual interest rate set by the broker at the time of origination) multiplied by the amount of the loan. *Bell v. Parkway Mortgage, Inc. (In re Bell),* 309 B.R. 139, 153 n. 9 (Bankr.E.D.Pa.

## 2. *The Debtors' Bankruptcy*

On April 2, 2007, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. By order dated June 28, 2007 (the "Bar Date Order"), this Court established August 31, 2007 at 5:00 p.m. (prevailing Pacific Time) as the deadline for filing proofs of claim in the chapter 11 case (the "Bar Date") (Main Case D.I. 1721). On July 9, 2007, the Debtors' claims and noticing agent, Xroads Case Management Service LLC (the "Claims Agent"), filed a Declaration of Service, stating that it mailed a copy of the *Notice of Bar Date* (the "Bar Date Notice") and a proof of claim form substantially similar to Official Form No. 10 to "parties listed on the Master Mailing Matrix as set forth on a list maintained by Debtors' counsel." (Main Case D.I. 1861). On August 3, 2007, the Claims Agent filed affidavits of publication stating that it had published the Bar Date Notice in *The Wall Street Journal* (National Edition) and *The Orange County Register* on July 23, 2007. (Main Case D.I. 2148 and D.I. 2149).

On November 20, 2009, the Court entered an Order confirming the Modified Second Amended Joint Chapter 11 Plan of Liquidation (the "Modified Plan") (Main Case D.I. 9905).[4] The Modified Plan adopted, ratified and confirmed the New Century Liquidating Trust Agreement, dated as of August 1, 2008, which created the Trust and appointed Alan M. Jacobs as Liquidating Trustee of New Century Liquidating Trust and Plan Administrator of New Century Warehouse Corporation.

## 3. *The Whites' Claims and Adversary Proceeding*

On November 22, 2008, the Whites filed claim number 4073 in the Debtors' bankruptcy case as a secured and/or priority claim in the amount of $272,500.00, plus accruing interest. On or about January 21, 2009, the Whites filed claim number 4074 and claim number 4080, which the Trustee believes are duplicates of claim number 4073 (together, claim numbers 4073, 4074 and 4080 are referred to herein as the "Claims"). On August 13, 2010, the Trustee filed an objection to the Claims, asserting that the Claims should be expunged because they (i) lacked merit, and (ii) were filed after the Bar Date.

After the Trustee objected to the Claims, the Whites filed the Complaint on November 10, 2010. The Scheduling Order dated December 13, 2010, consolidated the disputes regarding the Claims and the Complaint and set certain deadlines related to discovery and the filing of motions. (Adv.D.I. 9).

On December 15, 2010, the Trustee filed the Motion to Dismiss the Complaint. The Whites filed a response on January 14, 2011, and the Trustee filed a reply on January 21, 2011. Oral argument on the Motion to Dismiss was held on May 10, 2011.[5]

---

2004) citing *Noel v. Fleet Finance, Inc.*, 971 F.Supp. 1102, 1106–07 (E.D.Mich.1997).

**4.** This Court entered an Order Confirming the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008 (the "Confirmation Order") on July 15, 2008 (Main Case D.I. 8596), which became effective on August 1, 2008. An appeal was taken and, on July 16, 2009, the United States District Court for the District of Delaware issued a Memorandum Opinion reversing the Confirmation Order.

On July 27, 2009, the Bankruptcy Court entered the Order Granting Motion of the Trustee for an Order Preserving the Status Quo Including Maintenance of Alan M. Jacobs as Liquidating Trustee, Plan Administrator and Sole Officer and Director of the Debtors, Pending Entry of a Final Order Consistent with the District Court's Memorandum Opinion (the "Status Quo Order") (Main Case D.I. 9750).

**5.** At the time of the filing of the Complaint, the Whites appeared pro se. At the time of argument on the Trustee's Motion to Dismiss,

## DISCUSSION

1. *The Motion to Dismiss Counts II and VIII for Lack of Subject Matter Jurisdiction*

The Trustee moves to dismiss claims for rescission of the Mortgage and declaratory relief for cancellation of the Mortgage for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), made applicable hereto pursuant to Fed.R.Bankr.P. 7012.[6] The Third Circuit Court of Appeals has explained:

> A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff. In reviewing a factual attack, the court may consider evidence outside the pleadings.

*Gould Elec. Inc. v. United States,* 220 F.3d 169, 176 (3d Cir.2000) (citations omitted). Here, the Trustee's jurisdictional challenge is factual. He attached the Declaration of Donna Walker to his Motion to Dismiss (Adv.D.I. 11), and a Supplemental Declaration of Donna Walker to his Reply (Adv. D.I. 30) to support this challenge.

The standard for dismissal under Rule 12(b)(1) differs from that used for dismissal under Rule 12(b)(6). *Mortensen v. First*

*Fed. Sav. and Loan Ass'n.,* 549 F.2d 884, 891 (3d Cir.1977). The *Mortensen* Court wrote:

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction ... there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegation, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Id.* Accordingly, in addition to considering the facts alleged in the Complaint, I will also consider the Declarations provided by the Trustee.

In the Declaration, Walker states that the Trust's records reflect that NCMC sold the Note and Mortgage signed by the Whites (together, the "Mortgage Loan") to debtor NC Capital Corporation ("NC Capital") pursuant to a Mortgage Loan Purchase and Servicing Agreement dated as of December 1, 1998. (Walker Decl. ¶ 2). Thereafter, the Whites' Mortgage Loan was one of a pool of loans subject to a Forward Sale with Morgan Stanley Capital Inc. ("Morgan Stanley") as agreed by the Debtors and Morgan Stanley on May 24, 2006.[7] (Walker Supp. Decl. ¶ 4). The

---

the Whites were represented by counsel, who argued on their behalf.

6. In addition to a motion by a party pursuant to Fed.R.Civ.P. 12(b)(1), a court may also dismiss an action at any time *sua sponte* under Fed.R.Civ.P. 12(h)(3) if it determines that it lacks subject matter jurisdiction.

7. Walker's Supplemental Declaration further states that "the Debtors' business practices included entering into forward sales ("Forward Sale") to sell loans to investors. A Forward Sale could be entered into before the loans to be sold were funded." (Walker Supp. Decl. at ¶ 3). Once a sale of loans had

settled and was funded, the Debtors' custodian would transfer the original loan file, note, deed of trust and assignment endorsed in blank to the custodian or trustee designated by the investor. (*Id.* at ¶ 5). In 2006, Deutsche Bank acted as a custodian for the Debtors. The Trust's books and records reflect that Morgan Stanley directed the Debtors to transfer the original loan file, note, deed of trust and assignment endorsed in blank for all the loans purchased in the pool of loans, including this Loan, to Deutsche Bank as Morgan Stanley's trustee. (*Id.*). *See* Bankruptcy Code § 101(25).

Debtors' books and records show that the Forward Sale of the Whites' Mortgage Loan was completed with Morgan Stanley on September 21, 2006. (*Id., See* Adv. D.I. 53).

■ The Whites also claim that the Debtors transferred the Mortgage Loan but allege that the transfer occurred on March 8, 2007, less than a month before the Debtors filed the chapter 11 bankruptcy petitions. (*See* Complaint, ¶ 45, ¶ 128, and ¶ 189.) Whether the Mortgage Loan was transferred on September 21, 2006 or March 8, 2007, both sides agree that the Debtors transferred the Mortgage Loan prior to the bankruptcy filing. Accordingly, the Debtors had no interest in the Mortgage Loan as of the petition date and the Mortgage Loan was not property of the estate.[8] 11 U.S.C. § 541.

■ Count II of the Complaint seeks to rescind the Mortgage Loan and Count VIII of the Complaint seeks declaratory judgment that the Mortgage be cancelled for violation of the Florida Fraudulent Transfer Act (Fla. Stat. § 726.101 *et seq.*).[9] Count XII is entitled "Equitable Tolling" and also asks that the Court rescind the Mortgage Loan and cancel the Mortgage. However, since the Debtors transferred their interest in the Mortgage Loan prepetition, the Debtors did not, at the time of the bankruptcy filing, and do not now, have any interest in the Note or Mortgage; hence, this Court is without subject matter jurisdiction to order rescission or cancella-

tion of the Mortgage Loan, now held by an unrelated third party. Moreover, any modification or adjustment to the Mortgage Loan would have no effect or impact on the Debtors' estate or the Liquidating Trust. *See Scott v. AEGIS Mortgage Corp. (In re AEGIS Mortgage Corp.),* 2008 WL 2150120, *5 (Bankr.D.Del. May 22, 2008) (A declaration as to the rights of parties under a mortgage that was transferred prior to the bankruptcy filing will not alter the debtors' rights, liabilities, options or freedom of action because the debtors are no longer a party to it.). *See also In re Resorts Int'l, Inc.,* 372 F.3d 154, 168–69 (3d Cir.2004) (Post-confirmation, a bankruptcy court's jurisdiction is limited to matters in which "there is a close nexus to the bankruptcy plan or a proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement.").

The Motion to Dismiss the Complaint will be granted pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction as to Counts II, VIII, and XII.[10]

2. *Motion to Dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for Asserting Claims after the Bar Date Order*

A. *Standard*

Fed.R.Civ.P. 12(b)(6), made applicable by Fed.R.Bankr.P. 7012(b) governs a mo-

---

**8.** The Whites allege that the Debtors fraudulently transferred the loans in violation of "applicable bankruptcy rules and Florida law." (Complaint ¶ 45). The Whites do not identify specific bankruptcy rules or laws that were violated by any transfer. The Whites' also argue that the Debtors' transfer to Morgan Stanley was part of a fraudulent scheme in violation of the Florida Fraudulent Transfer Act (*see* Fla. Stat. § 726.105).

**9.** The Whites do not explain how the remedy of a cancellation of the mortgage arises from avoiding the transfer between the Debtors and Morgan Stanley under the Florida Fraudulent Transfer Act.

**10.** Dismissal of Count XII is without prejudice to the Whites to assert, if applicable, equitable tolling principles in this adversary; dismissal is of the Whites' requests for relief in the forms of rescission and cancellation of the Mortgage.

tion to dismiss for failure to state a claim upon which relief can be granted. "The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*, 496 F.Supp.2d 404, 407 (D.Del.2007) citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). When considering a motion to dismiss for failure to state a claim, the court should conduct a two-part analysis:

> First, the factual and legal elements of a claim should be separated. The [court] must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, the [court] must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.... This "plausibility" determination will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir.2009) (internal citations and punctuation omitted).

■ The relevant record under consideration consists of the complaint and any "document integral or explicitly relied on in the complaint." *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir.2002), citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997). When considering a motion to dismiss, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir.1988). The movant carries the burden of demonstrating that dismissal is appropriate. *Intel Corp.*, 496 F.Supp.2d at 408.

**B.** *Without a developed factual record, the Whites' remaining claims will not be dismissed by reason of the Bar Date Order*

■ The Trustee argues that the Whites' claims arising out of the Mortgage Loan, which closed on July 26, 2006, are prepetition claims that cannot be asserted against the Debtors after the Bar Date of August 31, 2007.[11] The Whites assert that their claims are not barred because they did not receive actual notice of the Bar Date.

■ The purpose and procedures for setting a claims bar date were aptly discussed by my colleague, Judge Gross, in *In re Smidth & Co.*, 413 B.R. 161 (Bankr. D.Del.2009):

**11.** The Whites argue that the Trustee should be judicially estopped from asserting inconsistent positions regarding the Bar Date. *See Montrose Medical Group Participating Savings Plan v. Bulger*, 243 F.3d 773, 779–80 (3d Cir.2001). The Whites claim that the Trustee previously admitted that the Whites were entitled to actual notice when he argued that the

Whites received "[n]otice of the Bar Date in accordance with the Bar Date Order." (Pl. Memo., Adv. D.I. 27, at p. 29). However, the Trustee's prior statement does not indicate agreement that the Whites were entitled to actual notice since the Bar Date Order provides for notice by publication. Judicial estoppel cannot be applied properly here.

Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedures authorizes courts to set bar dates by which proofs of claim or interest may be filed. This rule contributes to one of the main purposes of bankruptcy law, securing, within a limited time, the prompt and effectual administration and settlement of the debtor's estate. Setting an outside limit for the time to assert a right triggers due process concerns of which every court must be cognizant. This concern is resolved through notice: when a debtor provides proper notice to its creditors, due process is satisfied, and a court can bar creditors from asserting claims. What qualifies as proper notice, however, is dependent upon whether the creditor is known or unknown. If a creditor is known, the debtor must provide actual notice of the bankruptcy proceedings, whereas if the creditor is unknown, notice by publication is sufficient.

*Id.* at 165 citing, *inter alia, City of New York v. New York, N.H. & H.R. Co.,* 344 U.S. 293, 297, 73 S.Ct. 299, 97 L.Ed. 333 (1953), *Chemetron Corp. v. Jones,* 72 F.3d 341, 346 (3d Cir.1995). For creditors who receive the required notice, the bar date is a "drop-dead date" that prevents a creditor from asserting prepetition claims unless he can demonstrate excusable neglect. *Berger v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.),* 96 F.3d 687, 690 (3d Cir.1996).

■ The Trustee acknowledges that actual notice of the Bar Date was not served upon the Whites, but the parties dispute whether the Whites were "known" creditors entitled to actual notice. In *Chemetron,* the Third Circuit Court of Appeals articulated that a "known" creditor is one whose identity is either known or "reasonably ascertainable" by the debtor. *Chemetron,* 72 F.3d at 346 citing *Tulsa Professional Collection Serv., Inc. v. Pope,* 485 U.S. 478, 108 S.Ct. 1340, 1347, 99 L.Ed.2d

565 (1988). The *Chemetron* Court further explained:

A creditor's identity is "reasonably ascertainable" if that creditor can be identified through "reasonably diligent efforts." *Mennonite Bd. Of Missions v. Adams,* 462 U.S. 791, 798 n. 4, 103 S.Ct. 2706, 2711 n. 4, 77 L.Ed.2d 180 (1983). Reasonable diligence does not require 'impracticable and extended searches ... in the name of due process.' *Mullane,* 339 U.S. at 317, 70 S.Ct. at 659 The requisite search instead focuses on the debtor's own books and records. Efforts beyond a careful examination of these documents are generally not required.

*Id.* at 346–47. On the other hand, an "unknown" creditor is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." *Chemetron,* 72 F.3d at 346 quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 317, 70 S.Ct. 652, 659, 94 L.Ed. 865 (1950).

The Whites argue that, as customers of the Debtors, they are "known" creditors because their identity could have been ascertained easily from the Debtors' own books and records. The availability of the Whites' names and address in the Debtors' loan files may have reflected that the Whites were known *customers,* but without more, it did not make them "known *creditors.*" *Hebell v. NVR, Inc.,* 1997 WL 417363, *2 (N.D.Ill. July 21, 1997) (Holding that homeowner-mortgagors were not known creditors, even though their identities were "reasonably ascertainable" from the debtors' loan service records, when those records did not indicate that mortgagors were potential class members who could file suit in the future, thereby becoming claimants).

A debtor need not be omnipotent or clairvoyant, but need only do what is reasonable under the circumstances to provide notice to ascertainable creditors. *Gentry v. Circuit City Stores, Inc. (In re Circuit City Stores, Inc.)*, 439 B.R. 652, 660 (E.D.Va.2010) citing *In re J.A. Jones, Inc.*, 492 F.3d 242, 251 (4th Cir.2007).[12]

The Whites themselves admit that they were not aware of their claims against the Debtors until a mortgage foreclosure action was filed in May 2008. (Pl. Memo., Adv. D.I. 27, at p. 11, 22). Neither do the Whites allege that, at the time the Bar Date Notice was served, a review of the Debtors' records would have revealed that the Whites held potential claims that could be filed against the Debtors in the future. Therefore, the Whites were unknown creditors at the time the Bar Date Notice was being served and constructive notice by publication notice could satisfy due process concerns. *Chemetron*, 72 F.3d at 345. Whether, however, the publication notice given here meets the requisite due process standard as it applies to the Whites is yet to be determined.

The Bar Date Order provided that "[t]he Debtors shall cause the Publication Notice to be published once in the national edition of *The Wall Street Journal* and *any such other local publications as the Debtors deem appropriate* no less than 30 days prior to the General Bar Date." (Main Case D.I. 1721, ¶ 18) (emphasis added). The Debtors published notice of the Bar Date in *The Wall Street Journal* (National Edition) and *The Orange County Register* on July 23, 2007. The Trustee argues that publication notice was completed in accordance with the terms of the Bar Date Order and was reasonable because publication in a national edition of a newspaper such as *The Wall Street Journal* was designed to reach potential claimants across the United States. The Debtors also published the Bar Date Notice in the local California newspaper as the site of its principal place of business to provide constructive notice to employees. The Whites, however, argue that the publication notice did not satisfy due process requirements and notify them of the Bar Date.

"Due process requires notice that is 'reasonably calculated to reach all interested parties, reasonably conveys all the required information, and permits a reasonable time for response.'" *Chemetron*, 72 F.3d at 346. Whether a particular method of notice is reasonable depends on the particular circumstances. *Tulsa Professional*, 485 U.S. at 484, 108 S.Ct. 1340. In *Chemetron*, the Third Circuit wrote:

> It is impracticable ... to expect a debtor to publish notice in every newspaper a possible unknown creditor may read. Publication in national newspapers is regularly deemed sufficient notice to unknown creditors, especially where supplemented, as here, with notice in papers of general circulation in locations where the debtor is conducting business.

*Chemetron*, 72 F.3d at 348–49. The debtors in *Chemetron* published notice of the bar date order in the national editions of *The New York Times* and *The Wall Street Journal*, as well as in seven other newspapers in areas where the debtor was doing

---

12. What is reasonable must be determined by considering the totality of the circumstances in each case in light of certain factors, including (1) whether the identity of the creditors or their claims are conjectural or can be reasonably ascertained, (2) whether the cost of giving actual notice would consume a disproportionate share of the debtor's resources, and (3) the obligation of the court to existing creditors and the debtor's stockholders in light of the potential delay and the balance of the debtor's resources. *Circuit City*, 439 B.R. at 660.

business at the time of the filing. *Id.* at 345. The claimant in *Chemetron* argued that the debtor should have provided notice of the bar date in a Cleveland newspaper, since the debtor had ongoing difficulties in cleanup sites in the Cleveland area. The Third Circuit determined that Chemetron's publication notice was reasonably designed to reach all interested parties and noted that publication in a Cleveland area newspaper would not have reached the claimants, who had moved away from Cleveland. The *Chemetron* Court held that notice in *The New York Times* and *The Wall Street Journal* was sufficient. *Id.* at 348.

Here, the Debtors' publication notice of the Bar Date in the national edition of *The Wall Street Journal* was supplemented only with publication in one local California paper. Although the Debtors arguably complied with the stated minimum requirements of the Bar Date Order, without a more fully developed factual record, I am unable to determine whether the publication notice was reasonably calculated to provide notice to consumer mortgagors like the Whites.[13] At this stage in the proceeding, the Trustee has not met his burden of proving that publication in one national edition newspaper and one local newspaper is sufficient to meet due process requirements as applied to the Whites as unknown creditors. The motion to dismiss the Complaint by reason of the Bar Date Order will be denied.

## *CONCLUSION*

The Trustee's Motion to Dismiss will be granted, in part, to dismiss Counts II, VIII and XII of the Complaint for lack of subject matter jurisdiction because the Debtors had no interest in the Mortgage Loan

---

**13.** The United States Supreme Court has observed that "chance alone brings a person's attention to an advertisement in small type inserted in the back pages of a newspaper."

as of the petition date. The Motion to Dismiss will be denied as to the remaining Counts. An appropriate Order follows.

## ORDER

AND NOW, this 7th day of June, 2011, upon consideration of the Trustee's Motion to Dismiss Adversary Proceeding (D.I. 10), the response thereto, and after oral argument, and for the reasons set forth in the foregoing Memorandum, it is hereby **ORDERED** and **DECREED** that (i) the Motion to Dismiss is granted, in part: Counts II, VIII and XII of the Complaint are **DISMISSED** for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1); and (ii) the Motion to Dismiss is **DENIED** as to the remaining Counts.

*Jones v. Flowers,* 547 U.S. 220, 237, 126 S.Ct. 1708, 1720, 164 L.Ed.2d 415 (2006) citing *Mullane,* 339 U.S. at 315, 70 S.Ct. 652, 94 L.Ed. 865.